Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| ASOCIACIÓN DE CONDÓMINOS QUADRANGLE MEDICAL CENTER **Apelante** V. LISETTE ENID CRUZ PEÑA **Apelada** V. DR. OSVALDO I. CARO PÉREZ **Parte con Interés** | KLAN202301079 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas Civil. Núm. GG2019CV01250 Sobre: Cobro de Dinero, Cuotas Condominios |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

**Hernández Sánchez, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de marzo de 2024.

El 1 de diciembre de 2022, la Asociación de Condóminos Quadrangle Medical Center (Asociación o apelante) compareció ante nos mediante un *Escrito de Apelación* y solicitó la revocación de una *Sentencia* que se emitió y notificó el 19 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI). Mediante el aludido dictamen, el TPI le imputó el pago del monto de $5,531.02 a la Sra. Lisette Enid Cruz Peña (señora Cruz Peña o apelada) por concepto de cuotas de mantenimiento. Sin embargo, eximió a la apaleada del pago de intereses y recargos de la propiedad objeto de esta controversia ubicada en el Municipio de Caguas (en adelante, Oficina 305). Por último, le impuso el pago de parte de la deuda por concepto de cuotas de mantenimiento al Sr. Osvaldo I.

Caro Pérez (señor Caro Pérez), fundamentándose en la aplicación de un acuerdo entre estos.

Por los fundamentos que expondremos a continuación, *modificamos* la *Sentencia* apelada y así modificada *confirmamos*.

I.

El 11 de abril de 2019, la Asociación presentó una *Demanda* en cobro de dinero contra la señora Cruz Peña.[1] Alegó que la apelada era dueña de la Oficina 305 y le adeudaba a la Asociación la suma de $103,952.67 por concepto de cuotas de mantenimiento, derramas y gastos operacionales del sistema de acceso controlado, seguridad y mantenimiento de áreas vecinales, según lo establecía la Ley Núm. 104 del 25 de junio de 1958, según enmendada, también conocida como la *Ley de Condominios de Puerto Rico*, 31 LPRA sec.1291 *et seq.*, (Ley Núm. 104). Aclaró que dicha suma continuaría aumentando a partir de la presentación de la *Demanda*, conforme a la cuota mensual de $791.00, más intereses y penalidades. Sostuvo que le reclamó dicho monto a la apelada, pero esta se negó a pagar. Además, solicitó el pago de $31,185.80 por concepto de honorarios de abogado y $450.00 para gastos de embargo.

Por su parte, el 21 de junio de 2019 la señora Cruz Peña presentó su *Contestación a la Demanda* en la cual negó la mayoría de las alegaciones.[2] Además, arguyó que la apelante nunca se comunicó para realizarle el cobro de cuotas y gastos directamente. Afirmó que las comunicaciones estaban dirigidas únicamente al señor Caro Pérez. Posteriormente, el 25 de junio de 2019, la apelada presentó una *Demanda contra Tercero* en contra del señor Caro Pérez.[3] Indicó que estuvo casada con este último hasta el 13 de

---

[1] Véase, pág. 42 del apéndice del recurso.
[2] Íd., págs. 43-44.
[3] Íd., págs. 45-49.

marzo de 2011, fecha en que se disolvió el vínculo matrimonial. Adujo que ambos suscribieron una *Estipulación y Transacción* en el caso de liquidación de bienes en el cual el señor Caro Pérez se hacía responsable de todas las deudas relacionadas a la Oficina 305. Particularmente, alegó que en la sentencia de liquidación de bienes le fue adjudicada la propiedad que es objeto del cobro de los cánones de mantenimiento al señor Caro Pérez.

Pese a lo anterior, la apelada explicó que, para el 30 de marzo de 2015, el señor Caro Pérez otorgó la Escritura Número doce (12) sobre *División Parcial de Bienes Gananciales y Adjudicación* (Escritura Núm.12).[4] Expresó que, mediante esta escritura, este último le cedió la Oficina 305 a la apelada. La apelada también esbozó que ella y el señor Caro Pérez suscribieron un acuerdo privado el cual establecía que, si para el 30 de septiembre de 2015, el señor Caro Pérez no abandonaba la Oficina 305, tenían que otorgar un contrato de arrendamiento y pagar el canon correspondiente. Planteó que, luego transcurrido el plazo establecido sin que el señor Caro Pérez desalojara la Oficina 305, la llegaron a un acuerdo verbal de arrendamiento de la Oficina 305. Sostuvo que, mediante dicho acuerdo verbal, el señor Caro Pérez se comprometió a pagarle un canon mensual por el uso de la Oficina 305 y, además, se comprometió a pagar el mantenimiento de la Oficina 305. Sin embargo, esbozó que el señor Caro Pérez continuó ocupando la Oficina 305 hasta enero de 2019 y nunca pagó el canon de arredramiento acordado ni el mantenimiento.

Por los motivos antes expuestos, razonó que el señor Caro Pérez era responsable de la totalidad de la deuda según el acuerdo del 30 de marzo de 2015. En consecuencia, indicó que este último le adeudaba la suma de $62,000.00 por concepto de cánones de

---

[4] Íd., págs. 198-203.

arrendamiento; $103,952.67 por cuotas de mantenimiento adeudadas y una cantidad no menor de $30,000.00 por costas, gastos y honorarios de abogado.

Tras varios trámites procesales los cuales no son necesarios detallar, el 10 de marzo de 2020, la Asociación presentó una *Moción de Sentencia Sumaria*.[5] En síntesis, esbozó que la alegación de la apelada referente a que algún titular previo a ella era el responsable del pago, no la eximía del pago de la deuda. De igual forma, argumentó que el Reglamento del Condominio establecía la obligación del pago de las cuotas de mantenimiento en sus artículos cuarenta y cinco (45) al cuarenta y ocho (48). Enfatizó que no existía controversia de hechos sobre la obligación de pago en el caso, por lo que procedía aplicar el derecho y consecuentemente dictar sentencia por la vía sumaria. A esos efectos, solicitó que se ordenara a la apelada el pago de las cuotas adeudadas de $127,626.87 al mes de marzo de 2020; cuotas mensuales desde dicha fecha por la suma de $781.00; la suma de $175.00 en concepto de gatos y la suma de $31,185.80 en concepto de honorarios de abogado.

En respuesta, el 7 de abril de 2020, la señora Cruz Peña presentó su *Oposición a Sentencia Sumaria*.[6] Adujo que existía una controversia sustancial de hechos la cual impedía resolver el caso por sentencia sumaria. De igual forma, arguyó que la Asociación pretendía imponer unas cuotas de mantenimiento, gastos e intereses, los cuales debían resolverse mediante desfile de prueba. Por último, señaló que la apelante tenía que demostrarle al tribunal que la cuota adeudada de $791.00 mensual, entre marzo de 2015 al año 2019, totalizaba $127,626.87 y no $45,878.00.[7]

---

[5] Íd., págs. 51-118.
[6] Íd., págs. 118-124.
[7] Íd., págs. 125-135. El 17 de abril de 2020, la parte apelante presentó una *Réplica a Oposición a Moción de Sentencia Sumaria.*

Luego de examinar los planteamientos presentados por las partes, el 25 de mayo de 2020, el TPI emitió una *Resolución* en la cual declaró No Ha Lugar la *Moción de Sentencia Sumaria.*[8]. Determinó que surgía de dicha moción que la apelada adeudaba las cuotas de mantenimiento que se le estaban reclamando. Por otra parte, enfatizó que la apelada adeudaba cierta partida por concepto de intereses y que dicha obligación surgía del reglamento de la Asociación. Sin embargo, señaló que la cuantía final adeudada no podía ser determinada mediante el mecanismo de sentencia sumaria. Ello, porque el estado de cuenta que presentó la apelante resultaba defectuoso, toda vez que incluía partidas considerables por concepto de cargos adicionales a los intereses que no se sustentaban con documentación alguna.

A su vez, concluyó que en el caso de autos se estableció la obligación de pago de intereses en el artículo 47 del *Reglamento del Condominio Quadrangle Medical Center.* No obstante, aclaró que, del estado de cuenta provisto, surgía el por ciento de interés aplicable a cada año al comienzo de este, pero no desglosaba desde qué momento se cobró el 1% de interés adicional y la forma en que se computaba. Es decir, la Asociación no logró establecer cuál era la partida base a la cual se le aplicaban los intereses en cuestión.

Por otra parte, el TPI determinó que no lo pusieron en posición de determinar a qué respondían las cuantías reclamadas por costas y gastos de abogado y que existía ausencia total de documentos a esos efectos. Por tanto, razonó, que existía duda con relación a si procedían los gastos alegados. Asimismo, no encontró sustento en cuanto a los gastos denominados *association expenses*. Por último, consignó que cualquier alegación de apelada de que algún titular

---

[8] Véase, págs. 136-144 del apéndice del recurso.

previo a ella era el responsable del pago, no la eximía del pago de la deuda.

En virtud de lo anterior, concluyó que existía controversias de hechos sustanciales respecto a lo siguiente:

1. La cuantía total adeudada por la parte demandante por concepto de los intereses aplicables y la forma de computarlos. Esto es, es desglose del cómputo de intereses a tenor con el artículo 47 del Reglamento del Condominio Quadrangle Medical Center:

   A partir del sexto día de cada mes, la cantidad adeudada devengara intereses al tipo legal máximo anual hasta su definitivo pago. La falta de pago de tres (3) o más plazos consecutivos, conllevara una penalidad adicional equivalente al 1% mensual del total adeudado.

2. La razonabilidad y cómputo, esto es, en qué consisten los alegados gastos legales que se incluyen en el estado de cuenta anejado por la demandante pero que no se desglosan o describen. Existe controversia de si proceden por sí mismos o por motivo de la demanda presentada y desde qué momento.

3. La razonabilidad y cómputo, esto es, en qué consisten los alegados gastos asociados ¨association expenses¨ que se incluyen en el estado de cuenta anejado por la demandante, pero no se desglosan o describen. Existe controversia de si proceden a la luz del Reglamento del Condominio y la ley.

Posteriormente, el 21 de agosto de 2022, el TPI emitió una *Orden*, en la cual le anotó la rebeldía al señor Caro Pérez.[9]   Luego de celebrado el juicio el 20 de marzo de 2023, el 19 de octubre de 2023, el TPI emitió y notificó una *Sentencia* en la cual formuló las siguientes determinaciones de hechos:[10]

1. La Demandada, al momento de presentarse esta acción y en la actualidad, es la dueña de una oficina localizada en el Condominio Quadrangle Medical Center - (en adelante, el "Condominio QMC") - 50 Ave. Luis Muñoz Marín, Suite 305, Caguas, P.R. 00725, (en adelante, la "oficina 305").

2. El inmueble donde ubica dicha oficina fue sometido al régimen de propiedad horizontal mediante la Escritura Número 50, otorgada el 20 de junio de 1991, ante el abogado notario Jorge Puig. El reglamento del condominio forma parte de su escritura matriz.

---

[9] Íd., pág. 50.
[10] Véase, págs. 1-19 del apéndice del recurso.

3. De conformidad con la Escritura Número 50 sobre "Escritura Matriz Dedicando el Inmueble al Régimen de Propiedad Horizontal y a la Ley de Condominios", la oficina propiedad de la Demandada tiene la obligación de pagar una cuota de mantenimiento, a razón de $791.00 mensuales.

4. En torno a esta oficina 305 se comenzó a acumular una deuda por concepto de cuotas de mantenimiento, por lo que los Demandantes realizaron gestiones de cobro previo a la radicación de la Demanda.

5. El Sr. Emilio Colón Cosme es el administrador del Condominio QMC desde el año 2007, y estuvo a cargo del cobro de las deudas de mantenimiento del condominio hasta el mes de agosto de 2014.

6. El Sr. Colón Cosme, como administrador del Condominio QMC le requirió personalmente al Tercero Demandado Dr. Osvaldo Carlo Pérez el pago de las cuotas de mantenimiento adeudadas anteriores al mes de septiembre de 2014.

7. Desde el mes de septiembre de 2014, la compañía Preferred Home Services, Inc. ("PHS"), es la encargada de realizar las gestiones de cobro en virtud del contrato de servicios otorgado entre la dicha compañía de cobro y el Condominio Quadrangle Medical Center.

8. Los Demandantes presentaron una acción de cobro, independiente a esta reclamación, contra el Tercero Demandado. En ese pleito el Tribunal de Primera Instancia (TPI) de Caguas dictó Sentencia en su contra, condenando al Dr. Carlo Pérez, entre otras cosas, a pagarle a los Demandantes la suma de $29,521.99, suma adeudada por este hasta el 16 de diciembre de 2015. Esta Sentencia advino final y firme y, el 20 de febrero de 2018, el TPI de Caguas emitió un Mandamiento de Ejecución y Embargo.

9. Actualmente, se adeudan cuotas de mantenimiento sobre la Oficina 305 del Condominio QMC que no han sido satisfechas en su totalidad.

10. La Demandada y Demandante contra Tercero estuvo casada con el Tercero Demandado Dr. Carlo Pérez hasta el 10 de junio de 2011, fecha en que el TPI de Caguas dictó sentencia de divorcio por la causal de ruptura irreparable decretando roto y disuelto el matrimonio de estos.

11. Durante su matrimonio, la Demandante contra Tercero y el Tercero Demandado adquirieron varias propiedades, incluyendo la Oficina 305 del Condominio QMC. El Tercero Demandado utilizaba esta Oficina 305 como su despacho de trabajo como médico siquiatra; además, el Tercero Demandado arrendaba a otros(as) ciertas áreas de la indicada oficina, por concepto de los cuales devengaba renta.

12. Luego de su divorcio, la Demandante contra Tercero y el Tercero Demandado presentaron una acción judicial ex parte para dividir la Sociedad Legal de Bienes Gananciales que existió entre ambos. En dicha Petición, las partes sometieron una estipulación adjudicándole al Tercero Demandado la Oficina 305 sita en el Condominio QMC. El TPI de Caguas acogió dicha estipulación mediante Sentencia dictada el 8 de enero de 2013.

13. Así las cosas, el 30 de marzo de 2015 la Demandante contra Tercero y el Tercero Demandado otorgaron la Escritura #12 del 30 de marzo de 2015, mediante la cual el Tercero Demandado cedió y traspasó todo derecho o participación en la Oficina 305 a la Demandante contra Tercero.

14. En esa misma fecha, el Tercero Demandado y la Demandante contra Tercero suscribieron un acuerdo privado estableciendo que el Tercero Demandado podría ocupar la Oficina 305 del QMC hasta el mes de septiembre de 2015. Además de esto, las partes estipularon que, del Dr. Carlo Pérez no desalojar la Oficina 305 para octubre de 2015, las partes tendrían que formalizar un contrato de arrendamiento.

15. Transcurrido el plazo establecido sin que el Tercero Demandado desalojara la Oficina 305, la Demandante contra Tercero y el Tercero Demandado llegaron a un acuerdo verbal de arrendamiento de la Oficina 305 del Condominio QMC.

16. Mediante este acuerdo verbal, el Tercero Demandado se comprometió a pagarle a la Demandante contra Tercero un canon mensual por el uso de la Oficina 305 y, además, el Dr. Carlo Pérez se comprometió a pagar el mantenimiento de la Oficina 305.

17. Luego de ese acuerdo, el Tercero Demandado continuó ocupando la Oficina 305 del QMC hasta el mes de enero de 2019.

18. Durante ese largo tiempo, el Tercero Demandado nunca le pagó a la Demandante contra Tercero los cánones de arrendamiento acordados entre ellos por el uso de la Oficina 305.

19. Como señaláramos, en ese tiempo, el Tercero Demandado ejerció su profesión de médico psiquiatra en dicha oficina y utilizó las facilidades del condominio, así también los elementos comunes.

20. Además, el Tercero Demandado subarrendó espacios en la Oficina 305 a varios profesionales de la salud mental, devengando por este concepto la suma de $1,700 mensuales.

21. Luego que la compañía Preferred Home Services, Inc. adviniera en conocimiento del cambio de titularidad de la Oficina 305 del Tercero Demandado a la Demandante contra Tercero, realizó gestiones de cobro dirigidas a la Demandada enviando cartas por correo certificado a la Oficina 305 del condominio QMC en las siguientes fechas: 17 de mayo de 2018 y 20 de junio de 2018.

22. La Demandante contra Tercero tomó posesión de la Oficina 305 en febrero de 2019, luego que el Tercero Demandado la desalojara en enero de 2019.

23. El 1ro de febrero de 2019, la Demandada y Demandante contra Tercero llegó a un acuerdo con los(as) profesionales de la salud mental que hasta esa fecha subarrendaban partes de la Oficina 305, mediante el cual estos(as) se comprometieron a pagar mensualmente los gastos operacionales de la oficina hasta su desalojo y/o notificación de la Demandada.

24. La Demandante contra Tercero comenzó a realizar los pagos por concepto de cuotas de mantenimiento de la Oficina 305 a partir del mes de octubre de 2019.

25. Desde esa fecha hasta marzo de 2023, la Demandante contra Tercero había realizado 42 pagos consecutivos. De estos, 40 pagos han sido por la cantidad de $791.00, uno por $900 y otro por $1,478.98, para un total pagado de $34,018.98.

26. El contrato de servicios otorgado entre los Demandantes y la compañía de cobros establece que PHS cobrará un 25% por sus servicios y la Junta podrá cobrar hasta un 33% para recobrar las cuotas no pagadas. Dicho acuerdo no fue aprobado mediante Asamblea, ni está incluido en la escritura matriz ni en el reglamento del Condominio QMC. [11]

En virtud de lo anterior, declaró Ha Lugar parcialmente la *Demanda* y la *Demanda contra Tercero*. En síntesis, determinó que la apelada era responsable del pago de las cuotas de mantenimiento de la Oficina 305 desde el 1 de febrero de 2019 hasta marzo de 2023. Consecuentemente, ordenó a la señora Cruz Peña a pagar a la apelante la suma de $5,531.02 por concepto de las cuotas de mantenimiento adeudadas por ese período, sin intereses, ni penalidades, ni *association expenses*. Además, ordenó a la apelada

---

[11] Véase, págs. 1-19 del apéndice del recurso.

a pagar a los apelantes una suma adicional de $1,659.31, por concepto de gastos y honorarios de abogado. En lo pertinente a las cuotas de mantenimiento de la Oficina 305 anteriores a febrero de 2019, concluyó que el señor Caro Pérez era responsable del pago de estas cuotas. Por último, dictaminó que las sumas adeudadas impuestas en la *Sentencia* devengarían interés legal a razón del 9.25% anual hasta el pago total de la deuda.

Insatisfecho con la determinación del TPI, el 30 de octubre de 2023, el apelante presentó una *Moción de Reconsideración.*[12] Sostuvo que la apelada conocía de su responsabilidad respecto al pago de cuotas de mantenimiento. Enfatizó que el hecho de que el señor Caro Pérez utilizara para sí la Oficina 305, no lo eximía de responsabilidad del pago de cuotas. Además, arguyó que el TPI tenía que determinar si en una demanda de cobro de dinero bajo la ley de condominios eran válidos los acuerdos en cuanto al pago de cuotas y si el Tribunal podía determinar que las partes no tenían que pagar una suma de dinero en concepto de intereses. El 3 de noviembre de 2023, el TPI emitió una *Orden,* en la cual declaró No Ha Lugar la *Moción de Reconsideración.*[13]

Aún inconforme, el 1 de diciembre de 2023, la apelante presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el Honorable Tribunal de Primera Instancia al resolver que los acuerdos privados entre la demandada y el tercero demandado obligan al condominio Quadrangle.**
>
> **Erró el Honorable Tribunal de Primera Instancia al determinar que los acuerdos entre la demandada y tercero demandado obligan a la demandante y al no determinar que la demandada estuvo obligada el pago de las cuotas de mantenimiento desde que adquirió la propiedad el 19 de septiembre de 1995.**
>
> **Erró el Honorable Tribunal de Primera Instancia al no otorgar suma alguna en concepto de intereses**

---

[12] Íd., págs. 20-40.
[13] Íd., pág. 41.

**cuando los mismos son requeridos por el reglamento de la demandante y la Ley de Condominios mostrando así perjuicio o parcialidad.**

Atendido el recurso, el 6 de diciembre de 2023, emitimos una *Resolución* concediéndole a la señora Cruz Peña y al señor Caro Pérez hasta el 2 de enero de 2024 para que presentaran su postura. Oportunamente, la señora Cruz Peña presentó su *Alegato en Oposición a Apelación* en el cual negó que el TPI cometiera los errores que se le imputó. Sin embargo, vencido el término concedido, el señor Caro Pérez no compareció a esta Curia. Posteriormente, el 16 de enero de 2024, emitimos una *Resolución* en la cual le concedimos a la apelada un término de diez (10) días para estipular la transcripción del juicio en su fondo que presentó el apelante en su apéndice.

La señora Cruz Peña presentó una *Moción en Cumplimiento de Orden* [...] en la cual indicó que no estipularía la transcripción que obraba del expediente ya que estaba incompleta por haberse omitido un día más que hubo de juicio. Le ordenamos a la parte apelante a presentar la transcripción de la prueba oral de la vista que se celebró el 21 de marzo de 2023. Así las cosas, la Asociación cumplió con nuestra orden y, en consecuencia, proveyó copia de la transcripción de la prueba oral de la referida vista. La señora Cruz Peña nunca se opuso a la transcripción de la prueba oral presentada por lo que se consideró estipulada.

Con el beneficio de la comparecencia del apelante y la apelada, procedemos a resolver. *Veamos.*

II.

**-A-**

Las obligaciones surgen de la ley, los contratos, cuasicontratos y de cualquier otra acción u omisión en la cual medie culpa o negligencia. Art. 1042 del Código Civil, 31 LPRA ant. sec.

2992.[14] Aquellas obligaciones derivadas de un contrato tendrán fuerza de ley para las partes, y deberán cumplirse según se hayan delimitado; *pacta sunt servanda.* Art. 1044 del Código Civil, 31 LPRA ant. sec. 2994. Los contratos son negocios jurídicos que existen desde que concurren los requisitos de consentimiento, objeto y causa. Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391. Una vez las partes consienten en obligarse a cumplir determinadas prestaciones, surge el contrato. Art. 1206 del Código Civil, 31 LPRA ant. sec. 3371; *Amador v. Conc. Igl. Univ. De Jesucristo*, 150 DPR 571, 581-582 (2000). En tal sentido, una vez perfeccionado el contrato, las partes se obligan no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza estén conformes con la buena fe, el uso y la ley. Art. 1210 del Código Civil, 31 LPRA ant. sec. 3375. Consecuentemente, los tribunales no podemos relevar a una parte de cumplir con el contrato cuando éste es legal y válido y no contiene vicio alguno. *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610, 627 (1997).

Cabe precisar, que los contratos serán obligatorios, cualquiera sea la forma que se hayan celebrado, siempre que concurran las condiciones esenciales para su validez. *Rodríguez Ramos v. ELA*, 190 DPR 448, 455 (2014). Cónsono con ello, en nuestra jurisdicción la contratación verbal es perfectamente vinculante. *Colón Colón v. Mun. de Arecibo*, 170 DPR 718, 730 (2007).

-B-

En el 2020 se aprobó la Ley Núm. 129-2020, según enmendada, mejor conocida como la *Ley de Condominios de Puerto*

---

[14] El Código Civil de 1930 fue derogado por la Ley 55-2020, conocida como el Código Civil de Puerto Rico de 2020. Sin embargo, para propósitos de la adjudicación de este caso estaremos citando el Código Civil derogado, el cual estaba vigente al momento en que surgieron los hechos que dieron lugar a la presente controversia.

*Rico*, 31 LPRA sec. 1921 *et seq.* (Supl. 2023) (Ley Núm.129) la cual derogó la ley de condominio anterior, a saber, la Ley Núm. 104, *supra*. Este nuevo estatuto entró en vigor inmediatamente. Así pues, el Art. 76 de la aludida legislación dispone que "sus disposiciones regirán a todo inmueble sometido al régimen de Propiedad Horizontal, irrespectivo de la fecha en que fuera sometido a dicho regimen". Por otro lado, dicho estatuto expone que, la administración de todo inmueble constituido en propiedad horizontal se regirá por lo dispuesto en esta ley, y, además, por un reglamento que deberá insertarse en la escritura de su constitución. 31 LPRA sec. 1921*l* (Supl. 2023).

Ahora bien, en lo pertinente al caso ante nos, el Art. 59 de la Ley Núm. 129, 31 LPRA sec. 1923d, establece el deber de los titulares de apartamentos a contribuir con los gastos comunes para la administración y conservación del inmueble. Particularmente, el referido artículo dispone lo siguiente:

> Los titulares de los apartamentos **están obligados** a contribuir proporcionalmente a los gastos para la administración, conservación y reparación de los elementos comunes generales del inmueble y, en su caso, de los elementos comunes limitados, así como a cuantos más fueren legítimamente acordados. (Énfasis Suplido)
>
> […]
>
> **Ningún titular podrá librarse de contribuir a tales gastos por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamento que le pertenezca, ni por haber incoado una reclamación administrativa o judicial contra el Consejo de Titulares o la Junta de Directores por asuntos relacionados con la administración o el mantenimiento de las áreas comunes, salvo que el tribunal o foro competente así la autorice.** Se entenderá que las acciones de cobro, como lo es el envío de una factura o estado de cuenta a un titular, interrumpirán cualquier término prescriptivo aplicable a cuotas de mantenimiento, derramas, multas, seguro comunal o deudas con el Consejo de Titulares.
>
> […]
>
> La deuda de un titular por concepto de cuotas de mantenimiento para gastos comunes se le podrá

reclamar judicialmente luego de ser requerido de pago mediante correo certificado con acuse de recibo y de éste no cumplir el pago en el plazo de vencimiento.

[...]

Cuando el demandante así lo solicitare, en aquellos casos en que el titular moroso hubiere arrendado el apartamento, el Tribunal podrá ordenar al arrendatario que consigne judicialmente a favor del Consejo de Titulares la cantidad total por concepto de cánones de arrendamiento, según éstos vayan venciendo, hasta que se cubra totalmente la deuda del titular. (Énfasis suplido)

Por su parte, el Art. 60 de la Ley Núm.129, 31 LPRA sec. 1923e, dispone lo siguiente:

La obligación del titular de un apartamento por su parte proporcional de los gastos comunes constituirá un gravamen sobre dicho apartamento. Por lo tanto, luego de la primera venta, el adquirente voluntario de un apartamento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con el Artículo 59, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario.

[...]

La referida obligación será exigible a quien quiera que sea titular de la propiedad que comprende el apartamento, aun cuando el mismo no haya sido segregado e inscrito como finca filial en el Registro de la Propiedad, o enajenado a favor de persona alguna.

Cónsono con lo anterior, el Tribunal Supremo de Puerto Rico ha manifestado que "[e]l pago de las cuotas de mantenimiento constituye un elemento fundamental para el sostenimiento de la vida en comunidad y para lograr el disfrute pleno y la coexistencia". *Condominio First Federal v. LSREF2,* 202 DPR 934, 940 (2019). Por ello, nuestro ordenamiento provee mecanismos de naturaleza sumaria para facilitar el cobro en concepto de cuotas adeudadas. *Con Tit. Centro Int'l Torre II v. PRCI,* 210 DPR 403, 415 (2022) citando a M.J. Godreau, *El condominio: el régimen de propiedad horizontal en Puerto Rico,* 2.a ed., San Juan, Ed. Situm, 2019, pág. 299. Ello responde elementos de importancia en cuanto al mantenimiento del régimen entre las cuales se encuentra (1) la

preferencia del crédito a favor de Consejo de Titulares; (2) la creación de un gravamen sobre el apartamento; y, por último (3) la responsabilidad solidaria de aquel adquirente voluntario. Íd.

A tono con todo lo anterior, nuestro Máximo Foro ha expresado lo siguiente:

> Por ser las cuotas de mantenimiento de estos elementos comunes parte integrada permanentemente a la utilidad y valor económico de cada departamento, así dispuesto por la Ley especial que regula este tipo de propiedad, **no pueden ser ignoradas en la contratación respecto a dichas unidades ni pueden los contratantes acordar términos con efecto último de evadir las responsabilidades económicas que son vida y esencia del régimen instituido** y reglado por dicha Ley de la Propiedad Horizontal. La propiedad, como la libertad, aun cuando inmunes a la destrucción bajo la Constitución, no lo están de la reglamentación esencial para el bien común. (Énfasis suplido) *Asociación de Condóminos v. Centro I, Inc.,* 106 DPR 185, 193, (1977).

### III.

En el presente caso, la apelante nos solicitó la revocación de la *Sentencia* que emitió y notificó el TPI el 19 de octubre de 2023. En su primer señalamiento de error, argumentó que el TPI erró al resolver que los acuerdos privados entre la apelada y el señor Caro Pérez obligaban al Condominio. En su segundo señalamiento de error, reiteraron el error antes expuesto y añadieron que erró el TPI al determinar que la apelada estaba obligada al pago de las cuotas de mantenimiento desde que adquirió la propiedad el 19 de septiembre de 1995. Por último, en su tercer señalamiento, impugnó la determinación del TPI de no otorgar suma alguna en concepto de intereses cuando estos son requeridos por el Reglamento del Condominio y la Ley de Condominios. *Veamos.*

Por estar íntimamente relacionados entre sí, procederemos a discutir el primer y segundo señalamiento de error de manera conjunta. Conforme surge del expediente ante nuestra consideración, el Edifico Quadrangle Medical Center está adscrito al régimen de propiedad horizontal según lo establece la *Escritura*

*Número Cincuenta, Escritura Matriz,*[15] por lo que le es aplicable la Ley Núm. 129-2020, *supra.* Como reseñáramos, dicho estatuto les impone la obligación **a todos sus titulares** de contribuir proporcionalmente a los gastos para la administración, conservación y reparación de los elementos comunes generales del inmueble. Véase Art. 59 de la *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1923d (Supl. 2023). Dicho lo anterior, es evidente que nuestro ordenamiento jurídico es claro en cuanto a que esta obligación es una personal, en la cual el titular del apartamiento es el acreedor y la persona obligada a cumplir con el pago de la cuota de mantenimiento que el condominio establezca. *Asociación de Condominios Balcones S.Ma. v. Los Frailes, S.E.*, 154 DPR 800, 815 (2001) (citas omitidas).

Conforme surge del expediente, el **30 de marzo de 2015** el señor Caro Pérez y la señora Cruz Peña suscribieron la Escritura Núm. 12.[16] En dicha escritura pública, el señor Caro Pérez **cedió la totalidad de la Oficina 305** a la señora Cruz.[17] Por tal razón, la persona que estaba obligada a cumplir con el pago de las cuotas de mantenimiento desde ese instante era la señora Cruz Peña. Por lo anteriormente expuesto, es forzoso concluir que es inmeritorio el razonamiento esbozado por el TPI referente a que la obligación de sufragar los gastos comunes de la Oficina 305 se debía dividir entre el señor Caro Pérez y la señora Cruz, fundamentado en un acuerdo verbal entre ambos. La responsabilidad de pagar la respectiva cuota de mantenimiento desde marzo de 2015 **recae únicamente en la titular del inmueble, la señora Cruz Peña**. Por tal motivo, colegimos que la cantidad que la señora Cruz Peña le adeuda a la

---

[15] Véase, pág. 145-168 del apéndice del recurso.

[16] Íd., págs. 198-203.

[17] A pesar de que reconocemos que el TPI le dio validez al contrato verbal que se celebró entre le señor Caro Pérez y la señora Cruz Peña, posterior al 30 de marzo de 2015, para el arrendamiento de la Oficina 305, la apelada como quiera era responsable del pago de las cuotas de mantenimiento por seguir siendo titular de la propiedad.

Asociación es **$54,351.65** de los cuales $48,820.63 se le habían adjudicado al señor Caro Pérez y $5,531.02 a la señora Cruz Peña. **Así pues, determinamos que el primer y segundo error formulados por el apelante fueron cometidos.**

Ahora bien, en cuanto al tercer señalamiento de error, es preciso destacar el contenido del *Reglamento Condominio Quadrangle Medical Center*. Así pues, el Artículo 47 dispone lo siguiente:

> Los titulares pagarán su aportación por mensualidades que serán exigibles por adelantado los días primeros de cada mes. No obstante, los Titulares podrán realizar el pago de sus cuotas durante los primeros 5 días de cada mes sin recargo o penalidad. A partir del sexto día de cada mes, la cantidad adeudada devengará intereses al tipo legal máximo anual hasta su definitivo pago. La falta de pago de tres (3) o más plazos consecutivos, conllevará una penalidad adicional equivalente al 1% mensual del total adeudado.[18]

Nótese que el lenguaje del Reglamento es claro en cuanto a cuando y como deben computarse los intereses por incumplimiento de pago. No nos convence el razonamiento del TPI de eximir del pago de esta partida bajo el pretexto de que el apelante no logró demostrar la procedencia de la cuantía que se le imputaba a la apelada. **En tal caso, el TPI puede imponer el monto a pagar siguiendo las pautas del citado Art. 47 del Reglamento de Condominio Quadrangle Medical Center.** En consecuencia, determinamos que el tercer error imputado por le Condominio no se cometió, toda vez ningún fundamento en derecho para eximir a la señora Cruz Peña de dicho pago.

En resumen, por el análisis que antecede, concluimos que corresponde modificar la cuantía correspondiente al principal de las cuotas de mantenimiento adeudadas correspondientes a **$54,351.65.** A dicha suma se le debe agregar el interés aplicable conforme al Art. 47 del Reglamento del Condominio. En cuanto al

---

[18] Íd., pág. 116.

resto de las determinaciones realizadas por el TPI, estas se confirman.

IV.

Por lo antes expuesto, ***modificamos*** el dictamen apelado a los efectos de modificar la cuantía que la señora Cruz Peña debe pagar por concepto de cuota de mantenimiento y ordenarle al TPI a que calcule los intereses que la señora Cruz Peña debe pagar. Así modificado, ***confirmamos***.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones